UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| **GREAT WEST CASUALTY COMPANY,** | ) | |
| **a foreign insurance company,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Case No. 06-CV-0368-CVE-SAJ** |
| | ) | |
| **LLOYD BOROUGHS, an individual,** | ) | |
| | ) | |
| | ) | |
| **Defendant.** | ) | |

**OPINION AND ORDER**

Now before the Court is Plaintiff, Great West Casualty Company's Motion for Summary

Judgment (Dkt. # 14).  Great West Casualty Company ("Great West") filed its complaint for

declaratory judgment (Dkt. # 2) on July 17, 2006.  In its complaint, Great West asked the Court to

declare that (1) Great West is not liable under its insurance policy with Elliott Truck Lines, Inc.

("Elliott") with respect to the claim asserted by defendant Lloyd Boroughs ("Boroughs") for

uninsured /underinsured motorist ("UM") benefits; (2) Great West is not liable under the insurance

policy with  Elliott to pay for or provide reimbursement for any damages alleged by Boroughs as

a result of his work related injury; and (3) a reasonable basis exists for Great West's denial of

coverage to Boroughs.[1]  Dkt. # 2, at 3-4.  Great West filed a motion for summary judgment on the

ground that there is no genuine issue of material fact that Boroughs cannot maintain a claim for UM

coverage.

---

[1]      In its complaint, Great West also asks that the Court award Great West its reasonable
attorneys fees, costs, and expenses incurred in this action and to provide other relief that this
Court deems appropriate.  Dkt. # 2, at 4.

For the reasons set forth below, the Court grants plaintiff's motion for summary judgment.

## I.

Boroughs was employed as a truck driver for Elliott for more than thirty-three years.  He begin work for Elliott in December 1969 and was terminated in June 2002.  Dkt. # 17, Ex. 6, at 31, 36.  From 1997 to 2001, one of Boroughs' jobs was to haul flour from the rail station in Afton, Oklahoma to Vinita, Oklahoma, where Elliott was located, through the use of Elliott's tanker trucks. Dkt. # 14, Ex. 2, Boroughs Deposition, at 2.  According to Boroughs, he was very familiar with how to load and unload the tanker trucks and did not require any daily supervision to conduct this job. Id.  He claims to have been competent in all aspects of the job of loading and unloading flour.  Id. Boroughs also testified that he did not need any assistance in performing this job.  Id. at 4.  He described the procedure as a "one-man job."  Id.

On November 4, 2001, Boroughs was injured in the process of transferring flour from a rail car to the Elliott tanker truck which he was operating.  On the day of the incident, Boroughs parked the Elliott truck by the rail car and connected the hose from the truck to the rail car to begin the process of loading flour onto the truck.  At this time, another Elliott truck driver, Fred Falling ("Falling") was present and began to help Boroughs.  Id. at 6.  Falling was another Elliott employee; he was not Boroughs' supervisor and had no authority over Boroughs.  Id.  Boroughs was under the impression that Falling had depressurized Boroughs' hose because when he stepped on the loading line, it was flat.  Id. at 10.  But when Boroughs unhooked the loading line, the pressure was still on, and the hose blew off.  Id. at 7.   When the hose blew off, Boroughs' shoulder was injured.  Id. at 8.  Boroughs required surgery after the injury.

In his deposition testimony, Boroughs maintains that the truck and the trailer were in good condition on the day of the incident.  Id. at 9-10.  He did not have any problems with the pressure

3

valves on the trailer before the November 2001 accident. Id. at 10.  Further, Boroughs admits that

it was his responsibility to "bleed-down" (i.e., depressurize) the valve during the flour-loading

process. Id. at 8.  In his deposition, Boroughs testified that it was not "normal" for Falling to do his

loading and unloading or for Falling to be responsible for bleeding down the lines on Boroughs'

truck. Id. at 7.

Boroughs further maintains that his Elliott supervisors did not improperly instruct him on

how to load or unload the trailers or depressurize the value. Id. at 11.  Boroughs knew how to open

and close the valves to depressurize them; but he had not done so on November 4, 2001 because he

believed that Falling had done that job for him.   According to Falling, Elliott truck drivers

sometimes gave the other drivers assistance, but they were not instructed by Elliott to provide help

to other drivers.  Dkt. # 14, Ex. 3, Falling Deposition, at 2.  According to Jay Fimple ("Fimple"),

the President of Elliott, Elliott "does not have a policy in place requiring or encouraging drivers to

assist each other in loading and unloading flour in pneumatic trailers." Dkt. # 14, Ex. 5, Fimple

Affidavit, ¶ 3.  However, Elliott does not expressly mandate that the loading and transfer-of-flour

process is a one-person job.  See Dkt. # 17, Ex. 2, Elliott's Do's and Don't List.

After his injury, Boroughs filed a workers' compensation claim and was paid medical

benefits and temporary and permanent disability benefits. At the time of the accident, Great West

was an insurer of Elliott.   The insurance policy in effect included UM coverage for persons

occupying a covered motor vehicle. However, Boroughs did not make a UM claim until 2005. Dkt.

# 14, Ex. 1.

After his termination in 2002, Boroughs filed suit in this Court against Elliott for age

discrimination.  See Dkt. # 17, Ex. 6.  While the age discrimination case is unrelated to this case,

defendant relies on deposition testimony from that case in its response to plaintiff's motion for summary judgment.  In his 2004 deposition, Fimple testified that other workers complained about having to do Boroughs' work for him.  Dkt. # 17, Ex. 5, Fimple Deposition, at 27.  Fimple characterized the complaints as "common belly-aching around the yard."  Dkt. # 17, Ex. 5, at 28.  Also, Terrie Snodderly, the Elliott officer manager, testified in September 2004 that she had to had to "pay a lot of bills for [Boroughs]" and that Elliott offered to help pay Boroughs' bills "so he could keep a telephone, water, car payment paid, at no expense to Mr. Boroughs."  Dkt. # 17, Ex. 4, at 18.  During this line of questioning, she said that Boroughs was "lazy" and "didn't take care of his own business."  Dkt. # 17, Ex. 4, Snodderly Deposition, at 18.  After discussing Boroughs' two accidents after he became a part-time employee in January 2002, Snodderly also testified that she did not think that Boroughs was qualified to drive a truck.  Id. at 21.  Finally,  she testified:

> My opinion was, [Boroughs] was not a safe driver. He didn't take the time to do his job like the other drivers do.  He wouldn't get out of the truck to go – if there was something blocking, like he said, there was some type of equipment blocking the way, other drivers would have got out and made them move it, and he obviously didn't.  He didn't get out of the truck to do it.

Dkt. # 17, Ex. 4, at 23.

## II.

Summary judgment pursuant to Fed. R. Civ. P. 56 is appropriate where there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law.  Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250 (1986); Kendall v. Watkins, 998 F.2d 848, 850 (10th Cir. 1993).  "The plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element

5

essential to that party's case, and on which that party will bear the burden of proof at trial." <u>Celotex</u>, 477 U.S. at 317.

"When the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show that there is some metaphysical doubt as to the material facts. . . .  Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" <u>Matsushita Elec. Indus. Co. v. Zenith Radio Corp.</u>, 475 U.S. 574, 586-87 (1986) (citations omitted).  In its review, the Court construes the record in the light most favorable to the party opposing summary judgment. <u>Garratt v. Walker</u>, 164 F.3d 1249, 1251 (10th Cir. 1998).  "The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the [trier of fact] could reasonably find for the plaintiff." <u>Anderson</u>, 477 U.S. at 252.  In essence, the inquiry for the Court is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." <u>Id.</u> at 251-52.

## III.

In <u>Ply v. Nat'l Union Fire Ins. Co. of Pittsburgh</u>, 81 P.3d 643 (Okla. 2003), the Oklahoma Supreme Court, in answering certified questions from this Court, set forth the requirements for UM coverage under OKLA. STAT. tit. 36, § 3636:

> Our decisional law teaches that § 3636 mandates UM coverage where: (1) the injured person is an insured under the UM provisions of a policy; (2) the injury to the insured has been caused by an accident; (3) the injury to the insured has arisen out of the "ownership, maintenance or use" of a motor vehicle; and (4) the injured insured is "legally entitled to recover damages from the owner or operator of the uninsured motor vehicle."

<u>Id.</u> at 647 (quoting § 3636).  Here, there is no dispute as to the first and second prongs.  First, "a person qualifying as an insured is entitled to recover not only under his or her own UM policies but

6

also under the UM endorsement for the motor vehicle in which he or she was located at the time of the injury." Id. at 647 n.5.  Defendant was using an Elliott motor vehicle at the time of the accident, and the vehicle was insured under the Great West policy.  Second, "the accidental nature of the injurious event is determined from the point of view of the injured insured."  Id. at 647 n.6; Willard v. Kelley, 803 P.2d 1124, 1130 (Okla. 1990).  From the standpoint of Boroughs, the injury was clearly an unexpected accident.  Thus, the Court will focus on the latter two inquiries: whether defendant's injury arose out the ownership, maintenance, or use of the motor vehicle and whether defendant is legally entitled to recover from Elliott, as the owner of the motor vehicle.

In its motion for summary judgment, Great West argues that Boroughs is not entitled to UM benefits because his injury did not arise out of the negligent "maintenance" of a motor vehicle.  Plaintiff argues, and the Court agrees, that there is no evidence that the motor vehicle in question was negligently maintained.  Defendant admits that the tractor was in good condition on the day of the incident and that he did not have any problems with the pressure valves on the trailer before the November 2001 accident.  Dkt. # 14, Ex. 2, at 10.  However, Great West incorrectly states that "to be entitled to [UM benefits], Boroughs must show that he was injured as a result of the failure of his employer to properly maintain his tractor and trailer." Dkt. # 14, at 8.  While the court in Ply focused on "maintenance" based on the facts of that case, § 3636 clearly states that the injury must arise out of "ownership, maintenance or use" of a motor vehicle.  Based on the plain language of the statute, therefore, negligent maintenance is not a prerequisite to recovery of UM benefits.  If the injury arises out of ownership or use of the motor vehicle, then defendant may be entitled to recover.  Here, the main inquiry is whether the injury arises out of the use of the motor vehicle.

In <u>Safeco Ins. Co. v. Sanders</u>, 803 P.2d 688, 691 (Okla. 1990),[2] the Oklahoma Supreme Court held that "the phrase 'arising out of the ownership, maintenance or use of a motor vehicle', in ordinary and comprehensive words, encompasses a broad spectrum of factual sequences which might result in injury covered by the liability insurance policy."  The court specifically noted that the phrase "arising out of the use of a motor vehicle" is not synonymous with "caused by" or causal connection.  <u>Id.</u>  It held that "if the facts establish that a motor vehicle or any part of the motor vehicle is the dangerous instrument which starts the chain of events leading to the injury, the injury arises out of the use of the motor vehicle, as contemplated by [OKLA. STAT. tit. 36, § 3636]."  <u>Id.</u> at 692.  Here, from the record, it is difficult to determine whether Boroughs was injured when he unhooked the loading line from his trailer or the rail car.[3]  But viewing the facts in the light most favorable to defendant, the Court finds that, at minimum, there is a genuine issue of material fact as to whether Boroughs' injury arose out of the use of the motor vehicle.

The remaining inquiry is whether there is a genuine issue of material fact as to whether defendant is legally entitled to recover from Elliott, as the owner of the motor vehicle.[4]  Under

---

[2]    In <u>Ply</u>, the Oklahoma Supreme Court cited <u>Sanders</u> with favor. Thus, there is no reason to assume that the <u>Ply</u> decision, while it focuses on "maintenance" instead of "use," renders <u>Sanders</u> inapplicable.

[3]    If plaintiff unhooked the loading line from the trailer itself (i.e., if he was working with the truck equipment, as compared to the rail car equipment, at the time of the injury), then there is a stronger argument that his injury arose out of the use of the motor vehicle.

[4]    As a preliminary matter, the Court notes that the fact that the liability prescribed in OKLA. STAT. tit. 85, § 11 is "exclusive and in place of all other liability of the employer and any of his employees", OKLA. STAT. tit. 85, § 12, does not mean that Boroughs is not "legally entitled" to recover from Elliott.  In <u>Torres v. Kansas City Fire and Marine Ins. Co.</u>, 849 P.2d 407 (Okla. 1993), the Oklahoma Supreme Court held that the plaintiff was "legally entitled to recover damages" against the tort-feasor within the meaning of OKLA. STAT. tit. 36, § 3636 even though the tort-feasor was a coemployee who was immune from suit under exclusivity provisions of Oklahoma's workers' compensation laws.  The court reasoned that

Oklahoma law, the phrase "legally entitled to recover" refers to issues of fault.  Ply, 81 P.3d at 648;

Uptegraft v. Home Ins. Co., 662 P.2d 681, 684 (Okla. 1983).  It requires that "there must be a

tortfeasor, someone who has committed a wrong from which the insured has suffered damages,

before uninsured motorist coverage can come into play."  Ply, 81 P.3d at 648 (quoting Martin v.

Hartford Underwriters Ins. Co., 918 P.2d 49, 51 (Okla. 1996)).  "If an insured can establish that his

or her injury was caused by negligence on the part of the owner or operator of an uninsured vehicle,

he or she can recover UM benefits."  Ply, 81 P.3d at 648.  More specifically, "an employer may be

at fault within the meaning of 'legally entitled to recover from the owner or operator' in § 3636

where a supervisor, acting on behalf of the employer, provides faulty or negligent instructions or

directions to an employee relating to the use of an employer-owned motor vehicle and the employee

---

its decisions construing the phrase "legally entitled to recover" have relied on contract interpretation.  Id. at 411.  Providing UM benefits to employees, despite the exclusive remedy of Oklahoma's workers' compensation laws, fulfills the "legitimate contractual expectations of the parties."  Id.  The court held that, even when the plaintiff is insured only by virtue of his occupancy in the employer-owned vehicle, "the phrase legally entitled to recover damages means only that such insured be required to show fault on the part of the uninsured motorist which gives rise to damages and the extent of those damages."  Id. at 412.

Here, the facts differ somewhat from those in Torres because the "tort-feasor" in question is Elliott, plaintiff's employer, and not a coemployee.  Nonetheless, the principles in Torres apply to this case. There are no principles of contract interpretation which would call for a different meaning to the phrase "legally entitled to recover" merely because plaintiff was injured as a result of the alleged negligence on the part of his employer as compared to a coemployee.  See id. at 411.  Indeed, the court in Ply noted that the plaintiff in that case had recovered workers' compensation benefits for his accidental injuries.  Ply, 81 P.3d at 645.  The court did not conclude that this fact precluded the plaintiff from recovering UM benefits under its analysis of the phrase "legally entitled to recover."  On the contrary, the court cited Torres with favor, noting that the phrase "legally entitled to recover" does not mean that the injured insured must secure a judgment but must only establish "fault."  Id. at 648.  Based on the Oklahoma Supreme Court's holding in Torres and its implied application in Ply, the Court determines that the exclusivity provisions of Oklahoma's workers' compensation laws do not bar his recovery of UM benefits.

is injured while following the instructions." Id. at 649.  Here, the issue is whether there exists a genuine issue of material fact as to whether Elliott, as the owner of the vehicle, acted negligently in failing to prevent Boroughs' injury.

Great West argues that there is no evidence of negligent conduct on the part of Elliott. Boroughs testified that he received adequate instruction on how to load and unload the trailers and depressurize the valves.  Dkt. # 14, Ex. 2, at 11.  Boroughs even characterized the procedure as a "one-man" job and admitted that he was supposed to depressurize the hose himself.  Id. at 4. Further, Fimple's affidavit states that Elliott "does not have a policy in place requiring or encouraging drivers to assist each other in loading and unloading flour in pneumatic trailers." Dkt. # 14, Ex. 5, Fimple Affidavit, ¶ 3.

By contrast, Boroughs argues that Elliott was negligent in failing to instruct the drivers not to aid one another in the flour loading and unloading procedure.  Defendant bases his argument on the testimony of some Elliott managers in the age discrimination case that they knew Boroughs received help from other Elliott drivers in performing his jobs and that they classified Boroughs as an unsafe driver.  For example, in his September 16, 2004 deposition, Fimple testified as follows:

> Q: And what type employee was [Boroughs]?
> A: Well, all I can tell you is at the time when he was full-time, that it seemed like a lot of the drivers had to do some of his work for him, and they complained about it.
> Q:  What type of his work did they have to do?
> A: I'm not sure.  I just remember the drivers would come in and mention stuff to me, that I had to do this for Lloyd today or I had to do that for Lloyd today.
> Q: What does a truck driver have to do besides drive a truck?
> A: Well, they have to – in his case, when he was hauling flour, they had to hook up hoses and unload rail cars that had flour in it into their trailers to go take them back over to General Mills here in Vinita to unload them.

Dkt. # 17, Ex. 5, Fimple Deposition, at 27.  Clearly, Elliott relied on this testimony in the age discrimination case to show that Boroughs had been terminated for cause and not on the basis of his

age.  But Boroughs now relies on this testimony to argue that Elliott knew that Boroughs received help in the flour loading and unloading procedure.  Based on such knowledge, defendant argues that Elliott managers should have told its other employees, including Falling, not to aid Boroughs in his job.  Elliott's failure to provide such instruction, defendant contends, amounts to "negligent instruction."  See Dkt. # 17, at 5.  However, as Great West points out, Fimple does not state that he knew that other employees aided Boroughs with the specific job of flour loading and unloading.  On the contrary, Fimple specifically stated that he did not know what type of work other Elliott employees did for Boroughs.  Moreover, Boroughs testified that it was unusual for Falling to help him during the loading and unloading process.  See Dkt. # 14, Ex. 2, at 7.  If it was unusual for Falling or other employees to help in this manner, then Boroughs' argument that Elliott knew or should have known about such conduct is illogical.

Further, the Court finds that the testimony of other Elliott managers does not raise a genuine issue of material fact as to Elliott's negligent instruction.  The fact that Snodderly testified that she did not think that Boroughs was qualified to be a driver does not suggest that Elliott tacitly permitted Elliott drivers to aid one another in the flour loading or unloading process.  On the contrary, Snodderly's testimony, taken in context, has nothing to do with the flour loading and unloading process or even his alleged tendency to rely upon other Elliott employee in performing his job.

Finally, the fact that "[t]he official policy and procedure manual of Elliott Truck Lines did not mandate the one-person loading and transfer process as touted by Great West", Dkt. # 17, at 2, does not create a genuine issue of material fact concerning Elliott's alleged negligent instruction. It would be counter to any rational employment practice to "mandate" that the flour loading and unloading procedure be a one-person job.  Elliott would not want to prohibit one employee from

11

aiding another employee in the job, for example, in the case of an emergency.  The record is clear that employees – including Boroughs – knew that they were responsible for depressurizing their own loading lines, absent any unusual or emergency situation.  Thus, the fact that Elliott failed to create a written "mandate" that employees <u>must</u> perform the job without help from other employees does not raise an inference that Elliott was negligent.

Ultimately, based on the entire summary judgment record, a rational trier of fact could not find that Elliott provided negligent instructions regarding the flour loading and unloading process. Thus, the Court finds that there is no genuine issue of material fact as to Elliott's negligence.  It follows that Boroughs is not "legally entitled to recover"  from Elliott under § 3636, and is not entitled to UM benefits.

## IV.

In summary, the Court finds that, while there is a genuine issue of material fact as to whether Boroughs' injury arose out of the "ownership, maintenance or use of a motor vehicle," plaintiff Great West is nonetheless entitled to summary judgment because there is no genuine issue of material fact that Boroughs is not "legally entitled to recover damages" under OKLA. STAT. tit. 36, § 3636.

12

      **IT IS THEREFORE ORDERED** that Plaintiff Great West Casualty Company's Motion

for Summary Judgment (Dkt. # 14) is **granted**.  A separate judgment will be entered.

      **DATED** this 17th day of January, 2007.

CLAIRE V. EAGAN, CHIEF JUDGE
UNITED STATES DISTRICT COURT